UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANK PADRON FUENTES,

       Petitioner,

v.                                Case No. 3:26-cv-134-MMH-PDB

GARRETT RIPA, et al.,

       Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Frank Padron Fuentes, an immigration detainee, initiated this action through counsel by filing a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1; Petition) on January 23, 2026. Respondents filed a Response to Habeas Petition (Doc. 8; Response).[1] Fuentes filed a counseled Reply (Doc. 10; Reply). This case is ripe for review.

_____

[1] Callan Albritton, Assistant United States Attorney, filed the Response on behalf of all Respondents. See Response at 9 ("Lead counsel for Respondents"). On February 27, 2026, Nicolas Meros filed a Notice of Appearance on behalf of Respondent Ronnie Woodall (Doc. 9), and on March 2, 2026, he filed a Motion for Extension of Time on behalf of Woodall (Doc. 12), arguing that while the Response was purportedly filed on behalf of Woodall, it fails to address the issue of whether Woodall is a proper respondent. The time to file a response to the Petition expired on February 27, 2026. See Order (Doc. 5). Mr. Meros was retained on February 23, 2026 (Doc. 12 at 2) and filed the Notice of Appearance on February 27, 2026 (Doc. 9). While the Court appreciates the limited timeframe in which Mr. Meros had to review this case and the many others in which he has recently appeared in this Court, the Court

## II. Background

Fuentes, a citizen of Cuba, entered the United States on March 3, 2005, as a public interest parolee. Petition at 4; Doc. 8-1 at 2. On May 6, 2013, following some criminal convictions, Fuentes was ordered removed to Cuba. Petition at 5; Doc. 1-4 at 1; Doc. 8-1 at 4 (May 6, 2013 order of removal).[2] Nevertheless, when United States Immigration and Customs Enforcement (ICE) could not remove Fuentes, he was placed on an order of supervision (OSUP), and has now been living in the United States on that OSUP for over twelve years. Id. At his regularly scheduled check-in on November 18, 2025, "he was taken into custody, without any explanation, and told that he would await removal." Id. at 6.

Fuentes raises eight claims for relief stemming from the revocation of his OSUP. See id. at 15-25; see Reply at 7 ("[Fuentes] challenges the manner in which the government has re-detained him[.]"). As relief, Fuentes asks the Court to, inter alia, direct his immediate release from ICE custody under the same conditions he was on for the last twelve years. See Petition at 25.

---

does not find good cause to extend the response time in this case. As such, Woodall's Motion for Extension of Time is due to be denied.

[2] In the Petition, Fuentes mistakenly says his order of removal was entered on May 16, 2013.

### III. Analysis

The Court first addresses Respondents' argument that 8 U.S.C. § 1252(g) deprives this Court of jurisdiction to adjudicate Fuentes's claims. See Response at 3-4. Because the Court rejects that argument, the Court then addresses the merits.

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the

3

deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

Here, Fuentes is not attacking ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal. The crux of Fuentes's claims is that ICE failed to comply with its regulations and due process when it revoked his OSUP. The Eleventh Circuit has held that even where the statutory framework grants agency discretion, courts have jurisdiction to review whether an agency adhered to its regulations and procedures. See Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs., 775 F.3d 1255, 1262 (11th Cir. 2014) (per curiam). Thus, the Court finds that § 1252(g) does not bar Fuentes's claims.

### b. Count Two[3]

In Count Two, Fuentes argues that "[r]egulations specify who may lawfully revoke [an OSUP] and the procedures that must be followed when doing so, including giving notice and an opportunity to be heard." Petition at

---

[3] While Fuentes titles Count Two "Violation of the Fifth Amendment of the U.S. Constitution Procedural Due Process," he argues, in part, that certain regulations govern ICE's ability to revoke an OSUP and ICE did not comply with those regulations here. See Petition at 17-18. Respondents do not separately address each of Fuentes's Counts in the Response; instead, they dedicate half of their substantive response to arguing that ICE complied with its regulations when revoking Fuentes's OSUP. See Response at 6-8. The Court addresses the portion of Count Two arguing that ICE failed to comply with its regulations. Because the Court finds that argument to be dispositive, the Court does not address the other Counts or arguments in the Petition.

4

17; see id. at 11 (citing 8 C.F.R. §§ 241.4(*l*)(2), 241.13(i); see id. at 13 ("Upon revocation of an [OSUP], ICE must give a non-citizen notice of the reasons for revocation and a prompt interview to respond." (citing 8 C.F.R. § 241.4(*l*)(1)). Respondents argue that ICE "revoked Fuentes's OSUP under 8 C.F.R. § 241.1(*l*)[(2)]." Response at 6. According to Respondents, section 241.1(*l*)(2) does not require notice and an interview when revoking an OSUP; instead, that "regulation permits the Government extraordinarily broad discretion." Response at 7 (internal quotation marks and citation omitted).

On May 17, 2013, ICE initially released Fuentes on an OSUP, because it had not "effected [his] deportation or removal during the period prescribed by law[.]" Doc. 1-4 at 1.[4] On November 18, 2025, the day ICE re-detained Fuentes, ICE issued him a "Notice of Revocation of Release" advising him that he "will be detained" due to "changed circumstances in [his] case." Doc. 8-1 at 5. The Notice further states that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future" and "pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13," he will remain in ICE custody. Id. The Notice also advises that Fuentes "will promptly be afforded an informal interview at which [he] will be given the opportunity to respond to the reasons for the revocation and to provide evidence to demonstrate that [his] removal is

---

[4] The OSUP states that Fuentes's final order of removal was dated May 6, 2013, and he was released on an OSUP eleven days later. Doc. 1-4 at 1.

unlikely." Id. That same day, ICE also advised Fuentes that it intended to remove him to South Sudan. Id. at 7.

The language of the Notice suggests that ICE revoked Fuentes's OSUP under § 241.13(i)(2), which states: "Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Indeed, § 241.4(*l*)(2) permits revocation for four specific reasons, none of which are based on "changed circumstances" such that removal is now reasonably foreseeable as stated in the Notice.

Nevertheless, regardless of whether Fuentes's OSUP was revoked under § 241.4(*l*)(2) or § 241.13(i), he was entitled to notice and an informal interview.[5] Section 241.13(i)(3) provides that an "alien will be notified of the reasons for revocation" and ICE "will conduct an initial informal interview promptly after his" return to custody. And contrary to Respondents' argument that revocation under § 241.4(*l*)(2) does not require notice and an interview, the undersigned recently found that the procedural requirements in § 241.4(*l*)(1) apply to revocation of an alien's OSUP pursuant to § 241.4(*l*)(2). Maryanovsky v. Ripa,

_____

[5] Respondents' argument that Fuentes was not entitled to an interview, see Response at 7, is entirely inconsistent with ICE's Notice, which explicitly states that Fuentes "will promptly be afforded an informal interview" to respond to the reasons for revocation and produce evidence to show his removal is unlikely. Doc. 8-1 at 5.

No. 3:25-CV-1599-MMH-SJH, 2026 WL 496778, at *3–4 (M.D. Fla. Feb. 23, 2026).

While Fuentes technically received "notice," the Notice itself simply tracks the regulatory language and fails to describe any changed circumstances. The Notice, in effect, provides no notice at all. See Roble v. Bondi, 803 F. Supp. 3d 766, 772 (D. Minn. 2025)[6] (finding that "providing a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the 'reasons' why [the petitioner's OSUP] was revoked").[7] Respondents also have provided no evidence to show that

---

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

[7] The Court could surmise that the "changed circumstance" was ICE's intention to remove Fuentes to South Sudan. But Respondents do not even argue that. Even so, the regulation requires that the "changed circumstances" support ICE's determination "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Simply providing Fuentes with a notice of removal to a third country does not show a "significant likelihood" that he will be removed to that country in the reasonably foreseeable future. See Nguyen v. Warden, No. 1:26-CV-00350-JLT-EPG-HC, 2026 WL 629729, at *4 (E.D. Cal. Mar. 6, 2026) (finding a deportation officer's declaration that he has requested travel documents insufficient to constitute a "changed circumstance"); Hall v. Nessinger, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *9 (D.R.I. Jan. 2, 2026) ("On the record before the Court, the Government cannot make the showing necessary to prove that circumstances have changed such that there is a significant likelihood that [the petitioner] will be removed to Liberia in the reasonably foreseeable future pursuant to 8 C.F.R. § 241.13(i)(2)").

Fuentes was provided with an informal interview so that he could respond to the reasons for the revocation—they simply contend he was not entitled to one.

While ICE has wide discretion to detain, release, or revoke an alien's supervision, it is required to follow its own regulations. See Mohammed H. v. Trump, 781 F. Supp. 3d 886, 895 (D. Minn. 2025) ("An agency must also follow its own regulations." (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265 (1954))); see generally De Borba Oliveira v. U.S. Att'y Gen., No. 23-14019, 2025 WL 40541, at *3 (11th Cir. Jan. 7, 2025) ("To ensure due process, the [Board of Immigration Appeals] is required to follow its own regulations when exercising its discretion and issuing a decision."). It did not do so here. As such, the Court finds Fuentes's re-detention violated the regulations designed to afford him due process, and relief on Count Two is due to be granted. See McSweeney v. Warden of Otay Mesa Det. Facility, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *7 (S.D. Cal. Oct. 24, 2025) ("Both § 241.4 and § 241.13 were intended to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release. ICE deprived Petitioner of these due process protections when it failed to provide him with sufficient notice or a prompt interview to respond to the reasons for revocation of his release." (internal quotations and citation omitted)).

Because the Court will grant the Petition on the basis of Count Two, it does not, and need not, address Fuentes's remaining claims. See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").[8]

Accordingly, it is

**ORDERED**:

1.   Fuentes's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Count Two regarding ICE's failure to comply with its regulations when revoking Fuentes's OSUP. Respondents shall release Fuentes **within 24 hours of this Order**, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected. The Petition (Doc. 1) is otherwise **DENIED without prejudice** as moot.

2.   Respondent Warden, North Florida Detention Facility's Motion for Extension of Time (Doc. 12) is **DENIED**.

---

[8] Insofar as Fuentes requests attorney's fees, he may make such a request in a separate motion, if appropriate. See Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.

3.     The **Clerk** is directed to terminate any motions; enter judgment granting the Petition as to Count Two as stated herein; and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of March, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

JAX-3 3/13
c:
Counsel of Record